its decree, merely entered such a judgment as, had it been apprised of the facts, it would have entered in the first instance. But, with the consent decree, no mistake has occurred. All the facts were well known to the representatives of the United States. The consent was deliberately given, and the decree, which was thought to secure a great advantage to the United States, was formally entered, with full knowledge of its effect and operation. I know not on what ground the United States, or persons claiming under them, can now ask that it be set aside. (2) At the time the decree was amended, the supreme court, by its then latest decision, was supposed to have declared that all decrees of confirmation were simply interlocutory, and that the jurisdiction of the court over the case remained until a patent was issued. Under this view, it was natural to suppose that this court had, soon after the expiration of the term, power to amend its decree, especially where it had been mistaken as to matters of fact. But, in the last decision rendered by the supreme court, the decree of confirmation is, as we have seen, declared to be a final and conclusive determination of the boundaries and location described in it. And this, not only as between the United States and the claimant and parties their privies, but as between the claimant and a neighbor who was not a party to the cause when the decree was entered, and when the boundary established by the decree is the common boundary line between his rancho and that of the claimant. But, even if this court had authority to set aside or disregard the decree under which this survey has been made, it by no means follows that it could now direct the quantity of two leagues of land to be located as might appear to be just.

It has already been stated that, by the first decree of this court, there was confirmed to the claimant the entire tract. This decree was afterwards amended, so as to restrict the claimant to two leagues, and no more. But this amendment was made, not only after the expiration of the term, but after an appeal which had been taken by the United States had been dismissed by the order of the attorney general, and a consent given that the decree rendered should be final. Whether, under these circumstances, this court had any authority to enter a new decree presented a difficult and doubtful question.

The claimants, having appealed from this amended decree, had a right to the judgment of the supreme court whether (1) he had not, as he contended, by the terms of the original grant, a right to all the land within his boundaries, whatever might be its extent; and (2) whether, by force of the first decree of this court, the dismissal of the appeal by the United States, and the consent that the decree should be final, his right to the whole tract was not res adjudicata beyond the power of this court to disturb. When, therefore,

the claimant consented to abandon his appeal, and to accept a decree restricting him to two leagues, and the United States on their part agreed that the two leagues might be located at his election, it is clear that if, by force of subsequent special legislation, or in any other way, the claimant is deprived of the consideration for his agreement, the whole agreement should be annulled, and he should be restored to his former position, with his right of appeal to the supreme court unimpaired. But the special act referred to gives no authority to this court to effect so extensive and important a change in the whole posture of the case. It authorizes the parties named to "contest the correctness" of the survey, but it gives no authority to the court to vacate its decree, or to determine the correctness of the survey by any other rules, or on any other considerations than those by which it is governed in ordinary cases.

Under the law as laid down by the supreme court, I am compelled to pronounce any survey made in conformity with the decree of confirmation to be correct. As this survey is admitted to be in conformity with the decree of confirmation, it must therefore be confirmed. It is a satisfaction to me to know that, if this decision be erroneous, the recent law by which appeals from this court, in survey cases, are to be taken to the circuit, and not to the supreme. court, affords to the parties interested an easy and expeditious remedy.

## Case No. 14,729.

### UNITED STATES v. CARR.

[2 Cranch, C. C. 439.][1]

Circuit Court, District of Columbia. Nov. Term, 1825.

CRIMINAL PRACTICE — INDICTMENT — INDORSEMENT OF PROSECUTOR'S NAME — RECOGNIZANCE.

In cases of misdemeanor, the court in Alexandria will not compel the traverser to plead to the indictment, until a prosecutor's name be indorsed; and the recognizance will be respited; unless the attorney of the United States shall satisfy the court that it is a case which ought to be excepted out of the general rule.

[Cited in U. S. v. Helriggle. Case No. 15,344.]

Indictment for selling spirituous liquors without license. No name of a prosecutor was written at the foot of the indictment, as required by the Virginia statute of November 13, 1792, c. 74, §§ 24, 25. Nor had the offence been presented by the grand jury, upon the knowledge of two of their body, nor upon the testimony of a witness called upon by the court, or the grand jury, according to the provisions of the Virginia statute of December 2, 1795, c. 188, § 2.

Mr. Taylor, for defendant [David Carr], objected to pleading until a prosecutor's name should be indorsed.

[1] [Reported by Hon. William Cranch, Chief Judge.]

THE COURT (THRUSTON, Circuit Judge, absent,) said that they would not compel the defendant to plead to the indictment until a prosecutor's name should be indorsed, and that the recognizance should be respited.

Mr. Swann, for the United States, stated that the recognizance had been returned by a justice of the peace, with the names of the witnesses, and he sent them to the grand jury; and that he could satisfy the court that it is a case which should be excepted out of the general rule, and a day was assigned to hear the witnesses. See the general rule of November term, 1807.

## Case No. 14,730.

### UNITED STATES v. CARR.

[3 Sawy. 302.]

District Court, D. Oregon. March 23, 1875.

EXTORTION UNDER COLOR OF OFFICE—COLLECTOR OF CUSTOMS — CRIMES COMMITTED IN ALASKA—JURISDICTION.

1. Section 12 of the act of March 3, 1825 (4 Stat. 118), defining the crime of extortion under color of office, so far as officers of the customs are concerned, is an act relating to customs, and was therefore extended over Alaska by section 1 of the act of July 27, 1868 (15 Stat. 240).

2. Alaska being a place without the limits of any state or judicial district of the United States, within the meaning of section 14 of the act of March 3, 1825 (4 Stat. 118; Rev. St. § 730) this court has jurisdiction to try a person charged with the commission of a crime therein; provided such person is found in the district of Oregon or first brought here.

[Cited in U. S. v. Williams, 2 Fed. 62.]

3. Section 5481 of the Revised Statutes, being passed June 22, 1874, after the cession of Alaska, is in force there from the time of its passage.

[These were indictments against John A. Carr.]

Rufus Mallory, for the United States.
Joseph N. Dolph, for defendant.

DEADY, District Judge. Two indictments (Nos. 420 and 444) have been found against the defendant, the collector of customs at Fort Wrangel, Alaska, charging him with the commission of the crime of extortion under color of office. The defendant demurs to the indictments.

In support of the demurrer, it is maintained: (1) That section 12 of the act of March 3, 1825 (4 Stat. 118), defining the crime of extortion under color of office was not extended over Alaska by section 1 of the act of July 27, 1868 (15 Stat. 240), which only included "the laws of the United States, relating to customs, commerce and navigation;" (2) that upon the cession of territory to the United States, as in the cession of Alaska, the laws of the United States are not extended over it proprio vigore; and (3) that if the act of 1825, defining the crime of extortion, was extended over Alaska upon its

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

acquisition by the United States, still this court has no jurisdiction to try the defendant for a violation thereof, because the jurisdiction of this court over offenses committed in Alaska is conferred by the act of 1868 aforesaid, which only gives such jurisdiction for violation of that act and the laws relating to customs, commerce and navigation.

To this it is replied by the prosecution: (1) That the act of 1825 defining extortion, so far as the defendant, a deputy collector of customs, is concerned, is an act relating to customs—a revenue law—and therefore in force in Alaska by means of the act of 1868 aforesaid. (2) That said law being a general one for the punishment of extortion by any officer of the United States, was in force in Alaska proprio vigore from the time of its cession to the United States. (3) That by section 5481 of the Revised Statutes of the United States, passed June 22, 1874, the crime of extortion by an officer of the United States is defined, and that said act being passed since the cession of Alaska is in force there from the time of its passage, which was prior to the commission of the crime charged in the indictment No. 444. (4) That although this court would not have jurisdiction of these offenses for the sole reason that they were committed in Alaska, unless the act defining the crime of extortion was pro tanto an act relating to customs, and therefore extended over Alaska by the said act of 1868; yet under section 14 of said act of 1825 (Rev. St. § 730), if the law punishing extortion was otherwise in force in Alaska, this court would have jurisdiction to try the defendant upon the charges, if it appears that this is the district in which he was found or first brought, because Alaska, the place where the alleged crimes were committed, is without the limits of any state or district of the United States.

The demurrers must be overruled. The act defining the crime of extortion, and providing for its punishment, includes officers of the customs, and so far it is an act "relating to customs," and is, therefore, in force in Alaska by virtue of section 1 of the act of July 27, 1868, extending "the laws of the United States relating to customs, commerce, and navigation" over that country, if not proprio vigore.

Besides section 12 of the act of 1825, defining extortion, having been re-enacted on June 22, 1874, as section 5481 of the Revised Statutes,—after the cession of Alaska to the United States,—was, therefore, in force in that country proprio vigore at the time the crime charged in No. 444 is alleged to have been committed. This being so, the facts stated constitute a crime, of which this court has jurisdiction, it also appearing that it was committed without the jurisdiction of any particular state or district (section 14 of act of 1825; Rev. St. § 730); and that the defendant was first brought into this district, independent of the jurisdiction specially confer-